IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| WILLIAM W. BURGESS, JR., | ) | |
| Register No. 526336, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-4111-CV-C-SOW |
| | ) | |
| DAVE DORMIRE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

  Plaintiff William W. Burgess, Jr., an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

  Mr. Burgess filed this suit against Missouri Department of Corrections (MDOC) employees, asserting violation of his constitutional rights. The only claim remaining at this stage in the proceedings is plaintiff's allegation that MDOC defendants, Dave Dormire, Raydell Powell, Loyd Silvey, Alta Slater, and Don Wall, participated in denying plaintiff prescribed medication, in violation of the Eighth Amendment. On September 21, 2006, defendants filed a motion for summary judgment on plaintiff's remaining claim. Plaintiff has filed a response in opposition.

**Summary Judgment**

  Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

**Background**

Plaintiff has been an inmate at the Jefferson City Correctional Center (JCCC) in Jefferson City, Missouri, since October 12, 2004. While at JCCC, plaintiff has received 34 conduct violations, 18 for sexual misconduct, and thus, has remained in the administrative segregation unit.

The defendants in this action, with the exception of Superintendent Dormire, are corrections officers at JCCC. Plaintiff states defendant corrections officers escorted Correctional Medical Services (CMS) nurses in the administrative segregation units while medications were dispersed to the inmates. Medication rounds were made several times daily, and medications dispersed to inmates at their cell doors through the food port door. The nurses dispersing the medications are not corrections employees. For the safety of the nurses and security of the administrative segregation housing unit, nurses are escorted by corrections officers. Plaintiff states that during such medication rounds, defendant JCCC corrections officers denied him his medications on numerous occasions; specifically his heart and blood pressure medications and psychotropic medications. Plaintiff states he was diagnosed with a heart condition, high blood pressure, and paranoid schizophrenia. Plaintiff states that denial of his medications caused him to suffer chest pain on two occasions, and was detrimental to his health. Plaintiff alleges

2

defendant Dormire, the superintendent, was aware of the denial of medications, but failed to take action to remedy the situation.

### Eighth Amendment Claim

To succeed on his Eighth Amendment medical claims, plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. Id. The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176). When an inmate alleges a delay in medical treatment is a constitutional deprivation, the objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. Coleman v. Rahija, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)); see also Beyerbach v. Sears, 49 F.3d at 1326. An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Beyerbach v. Sears, 49 F.3d at 1326 (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).

Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment. Dulany v. Carnahan, 132 F.3d at 1239. To show intentional interference or delay in the provision of medical care, an inmate must show that a reasonable person would know that the prisoner requires medical attention, or that the action or inaction must be so dangerous to the health or safety of the prisoner that the official can be presumed to have knowledge of a risk to the

3

prisoner. Plemmons v. Roberts, 439 F.3d 818, 823 (8th Cir. 2006). Corrections officials can properly rely on the judgment of medical staff in determining the provisions of medical care an inmate receives. See Long v. Nix, 86 F.3d 761 (8th Cir. 1996) (prison officials properly relied on medical judgment in refusing to provide tranquilizers for prisoner).

Seriousness of Medical Deprivation

In the instant case, plaintiff had been diagnosed with high blood pressure and paranoid schizophrenia. These conditions by definition can be serious medical conditions. However, the objective seriousness of a deprivation of medical care, in this case the denial of prescription medication, is also measured by reference to the effect of the delay in treatment/medication. Crowley v. Hedgepeth, 109 F.3d at 502; Coleman v. Rahija, 114 F.3d at 784. Verifying medical evidence is required to show the detrimental effect of a delay. Coleman, 114 F.3d at 784. Such verifying medical evidence must provide either that defendants ignored an acute or escalating situation or that the delays adversely affected plaintiff's prognosis. Beyerbach v. Sears, 49 F.3d at 1326 (citing Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1995)).

Plaintiff has provided no evidence that denial of his medications was critical or constituted an escalating situation requiring immediate treatment. Plaintiff concedes in his deposition that he didn't suffer as a result of not receiving his medication. Further, plaintiff's medical records contain evidence of approximately 100 times that plaintiff himself refused his medication between October 2004 and September 2006, thus indicating that plaintiff was not concerned about the effects of missing doses of his medication. Additionally, to the extent plaintiff alleges that on two occasions he suffered chest pains, the record is clear that during such incidents, plaintiff was offered his medications but refused, and plaintiff has suffered no resulting adverse health problems. The evidence in this case fails to indicate that plaintiff's condition was critical or escalating. Plaintiff has also failed to provide any evidence that the delay in receiving his medications affected his prognosis.

Subjective Knowledge of Prison Officials and Refusal to Remedy

The undisputed evidence is that CMS nursing staff at JCCC are charged with the responsibility of dispensing medications and having knowledge of the inmates' medical conditions related to such medication. Corrections officers who escort the CMS nursing staff during medication rounds are charged with the safety of the CMS nurses and the security of the

housing unit, but not with the responsibility of providing medical care, including any determination as to what medications the inmates should be taking. Plaintiff does not provide evidence that corrections defendants knew what medications he was on, or the consequences of not taking or receiving such medications. Plaintiff's deposition testimony provides that it is the nurses' decision whether or not to give an inmate medication. Plaintiff's allegations that corrections defendants should have known of his medical conditions because they would have overheard nurses and doctors talking to him during medical visits fail to support allegations that corrections officers had actual knowledge of plaintiff's medical conditions. Further, corrections defendants may properly rely on the medical judgment of nurses. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3rd Cir. 1993) (non medical prison officials may rely on medical professionals and cannot be liable simply because they failed to respond to medical complaints of a prisoner who was already being treated by a prison doctor).

Medication Policy

Plaintiff states defendants were deliberately indifferent to his medical conditions, in violation of the Eighth Amendment, when they enforced a policy, put into effect by nondefendant corrections staff, providing that during medication rounds, an inmate who failed to be waiting at his cell door with his cell light on was considered to be refusing his medications. The record reflects that for a period of time, beginning in December 2005, JCCC had a policy providing that medication rounds were to be announced on the intercom within the housing unit, and at such time, inmates were required to turn on their cell lights and to wait at their doors to receive their medications through the food service slot. Plaintiff states, and his medical records verify, there were occasions in December 2005 and January 2006 when he was denied his medications because he did not have his cell light on, and/or did not get up to receive his medications. Plaintiff states defendants' actions in condoning and enforcing such policy violated his Eighth Amendment rights.

Despite plaintiff's allegation that enforcement of this policy constituted deliberate indifference to his health, such allegation is not supported by the evidence. The evidence fails to reflect that the policy was implemented for the purpose or with the knowledge that inmates would not be receiving their medications. Rather, the evidence is that the policy was

5

implemented to ensure safety and security during medication rounds within the administrative segregation unit.

Refusal to take Medications

Plaintiff's medical records clearly provide that on approximately 100 occasions, between October 2004 and September 21, 2006, plaintiff refused his medications either verbally or by failing to appear at his cell door with his light on. Thus, in spite of the nature of plaintiff's complaint seeking to recover damages for defendants' failure to provide medications, plaintiff, himself, on numerous occasions, refused his medication. In his deposition testimony, plaintiff acknowledges that from time to time he refuses his medication, but that his medications are not court ordered, so he may refuse if he chooses. Plaintiff states he does not refuse his morning medications, but rather will, at times, refuse his evening medications because he does not like the nurse or the corrections officer escorting the nurse. Plaintiff's medical records have numerous entries providing that he was refusing his medications, stating "he did not like the CO (corrections officer) that was bringing the nurse around to pass meds;" "I won't take my meds from you, I told you, come back ever again, and I'll write you up," and similar types of comments. Plaintiff's medical records indicate medical staff had discussed with plaintiff the risks of his refusing his medications, yet plaintiff continued to do so. Plaintiff's medical records indicate that he appears to have paranoid thoughts about nurses on the evening shift doing something to his medications that will harm him. Plaintiff states in his response to summary judgment that "custody and medical sat down and come up with a plan to deny Burgess his medications."

Plaintiff's own refusal to take medications counters his allegations of deliberate indifference by defendants, who he alleges were unconstitutionally denying him his medications. See Long, 86 F.3d at 766. The record reflects that rather than denial of medications, plaintiff's real discontentment with defendants is based on an irrational fear that medical and corrections staff are tampering with his medications, and plaintiff's discontentment with being required to receive his medications on a dose-by-dose basis, rather than controlling his own daily doses.

6

Case 2:05-cv-04111-SOW    Document 229    Filed 04/26/07    Page 6 of 7

### Conclusion

Plaintiff has failed his burden of establishing a genuine issue of material fact with regard to his claims that defendants unconstitutionally denied him medication. Plaintiff has come forward with no evidence to support the subjective or objective components of his Eighth Amendment claims. Therefore, defendants are entitled to summary judgment as a matter of law.

In light of this Court's recommendation to grant summary judgment, it unnecessary to address further grounds for dismissal at this time.

IT IS, THEREFORE, RECOMMENDED that defendants' motion for summary be granted and plaintiff's claims be dismissed. [220]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal. See L.R. 74.1(a)(2).

Dated this 26th day of April, 2007, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge